# UNITED STATES DISTRICT COURT

for the

District of Columbia

MOLLY LYNN WESTRATE

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

ALICE ALBRIGHT, CHIEF EXECUTIVE
OFFICER, MILLENIUM CHALLENGE
CORPORATION.

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:23-cv-03167 **JURY DEMAND**
Assigned To : Chutkan, Tanya S.
Assign. Date : 10/23/2023
Description: Employ. Discrim. (H-DECK)

Jury Trial: *(check one)*   ☒ Yes   ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETIATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Molly Lynn Westrate |
| Street Address | 225 I Street, NE #211 |
| City and County | Washington, D.C. |
| State and Zip Code | 20002 |
| Telephone Number | 202-841-5415 |
| E-mail Address | mlwestrate@gmail.com |

RECEIVED

OCT 23 2023

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**B.    The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual. a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Alice Albright, Millenium Challenge Corporation |
| Job or Title *(if known)* | Chief Executive Officer |
| Street Address | 1099 14th Street, NW Suite 1700 |
| City and County | Washington, D.C. |
| State and Zip Code | 20005-3550 |
| Telephone Number | 202-521-3600 |
| E-mail Address *(if known)* | |

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Millenium Challenge Corporation |
| Street Address | 1900 14th Street. NW Suite 1700 |
| City and County | Washington, D.C. |
| State and Zip Code | 20005-3550 |
| Telephone Number | 202-521-3600 |

**II.    Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

X        Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐        Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disability. Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.*

☐    Other federal law *(specify the federal law)*:

☐    Relevant state law *(specify, if known)*:

☐    Relevant city or county law *(specify, if known)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☐    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☐    Unequal terms and conditions of my employment.

X ☐    Retaliation.

X ☐    Other acts *(specify)*:    Unlawful gender-based harassment (non-sexual) and hostile work environment.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

On or about February 17, 2021 and ongoing until on or about February 7, 2023. Retaliation is ongoing.

C.    I believe that defendant(s) *(check one)*:

X    is/are still committing these acts against me.

⬐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain:)*

☐    race    _____

☐    color    _____

X
☐    gender/sex    And retaliation for protected
          activity.

☐    religion    _____

☐    national origin    _____

☐    age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows.  Attach additional pages if needed.

Please see Attachment A, which is incorporated into this Complaint.

I request a jury trial.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Informal Report to EEO 1/5/22. Formal Charge 3/9/22. Final Agency Decision received 7/25/23.

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

X    issued a Notice of Right to Sue letter, which I received on *(date)*    July 25, 2023    .

        *(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

I am entitled to back and front pay (both of which are due to my diminished salary increases due to retaliation and inability to work in my other job); reinstatement of my sick time;  compensatory damages for emotional distress including fees expended for medical care; and attorneys' fees and costs.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        10/19/2023

Signature of Plaintiff

Printed Name of Plaintiff        Molly Lynn Westrate

**B.**    **For Attorneys**

Date of signing: _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Street Address    _____

State and Zip Code    _____

Telephone Number    _____

E-mail Address    _____





**MILLENNIUM**
**CHALLENGE CORPORATION**
UNITED STATES OF AMERICA

**EEO Formal Complaint Form**

**Instructions:** This form is optional. If formal complaint is being filed without the use of this form, please refer to the Notice of Final Interview and Right to File a Discrimination Complaint under 29 C.F.R. Part 1614 for the information that must be included in the document.

1. Complainant Information

Name: Molly Lynn Westrate
Home Address: 225 I St., NE; #211
Washington, DC 20002
Home Telephone: 202-841-5415          Work Telephone:
FTS:                                                   TTD:
E-mail Address: mlwestrate@gmail.com

Representative Information: A Designation of Representative Form must be submitted if you have someone representing you. If you have previously submitted a Designation of Representative Form, or a suitable alternative, fill in the name and address of your representative below.

Name: Alexandra Romero and Valerie Samuels
Work Address: Arent Fox Schiff, LLP
1717 K St., NW, Washington, DC 20002
Work Telephone: 202-820-3469 (Romero); 617-973-6248 (Samuels)
E-mail Address: Alexandra.Romero@afslaw.com; Valerie.Samuels@afslaw.com

2. Are you a current Federal Government employee? Yes ☒  No ☐

If yes, provide agency name, position title, job series, grade and organization unit: _____
Millennium Challenge Corporation, International Communications Specialist, MC-301, 4A, Department of Congressional and Public Affairs

3. MCC organization, office or unit you believe discriminated/retaliated against you: _____
Department of Congressional and Public Affairs

4. Date of the last alleged discriminatory/retaliatory event or incident covered in counseling:
Retaliation dates: May 27, 2021, December 15, 2021, and continued February 15, 2022.

5. If you became aware of the alleged discriminatory/retaliatory event or incident covered in counseling on a date substantially different from that shown in 4, identify the date and explain how you became aware of this information.

EEO Formal Complaint Form
Page 2

6. Date you first contacted the EEO Office or an EEO Counselor regarding this matter and provide the individual's name and telephone number:  I contacted both the EEO Director and EEO counselor, LeJuan Butler. I first talked to LeJuan Buttler (202.361.3210) on January 5. 2022.

7. On this same matter, have you filed a grievance under a negotiated procedure? Yes ☐ No ☒

   Under the Agency administrative grievance system? Yes ☐ No ☒

   Merit System Protection Board? Yes ☐ No ☒

   If yes, state where and when filed or appealed, provide case number(s) and status of your grievance appeal: _____

   _____

   _____

8. Check the basis/bases on which you believe you were discriminated against. Put information in the space provided only for the category or categories in which you are alleging discrimination.
   ☐ Age: Date of Birth _____           ☐ Race
   ☐ Color                                   ☐ Religion
   ☒ Sex: Male ☐  Female ☒                   ☐ Disability: ☐ Mental  ☐ Physical
   ☐ National Origin                         ☒ Reprisal/ Retaliation for prior EEO activity

9. State your complaint: Identify the specific acts, incidents or events giving rise to your belief of discrimination or retaliation against you. Identify the dates on which each act, event, or incident occurred. The name of the individual you are alleging participated in the act, incident or event. (Use Extra Pages if Necessary)
   See attached complaint.
   _____
   _____
   _____
   _____

10. Identify the remedial or corrective action you are seeking to resolve your complaint.
    See attached complaint.
    _____
    _____
    _____
    _____

_ML Westrate_____                    March 9, 2022_____
Signature                                            Date
* *Your signature and date are required on this form.*

## ATTACHMENT TO DISCRIMINATION CHARGE

### Factual Background

1.    Pursuant to 29 C.F.R. Part 1614, I, Molly Lynn Westrate hereby file this Charge of Discrimination.

2.    My home address is:  225 I St, NE, #211, Washington, D.C. 20002

3.    My home telephone number is 202.841.5415. My office telephone number is 202.521.7894.

4.    My date of birth is June 23, 1980.

5.    I am currently employed as an International Communications Specialist, Office of Congressional and Public Affairs, Millennium Challenge Corporation ("MCC" or the "Agency").

6.    I began working for MCC on January 5, 2018.

7.    I have served my country as a member of the civil service for nearly 14 years. Most of that time (10 years) was spent at the U.S. Department of State in roles such as Media Relations Coordinator for Secretary of State, Condoleezza Rice; Communications Director for the Special Envoy for Climate Change; Public Affairs Officer for Embassy Monrovia, Liberia during the worst Ebola outbreak in history; and Communications Advisor for the Center for Strategic Counterterrorism Communications (among others).

8.    During that time, my awards and recognition include four (4) Meritorious Honor Awards; the Achievement of the Year Award - from the Foreign Service Public Diplomacy Alumni Association (2015); and the Benjamin Franklin Award for Public Diplomacy - the most prestigious honor the Department of State can bestow on a U.S. citizen.

9.    At MCC, I have been awarded performance ratings of Meets Expectations in 2018, Outstanding (2019), and Consistently Exceeds Expectations (2020). MCC has also recognized my

1

work through cash bonuses and performance-based salary increases during my tenure at the Agency (2018 - 2021). I have been a superb MCC employee and am passionately devoted to the Agency's mission.

10. I initiated contact with the MCC EEO Director, James Green on December 20, 2021. He referred me to LeJuan Butler, the MCC EEO Counselor.

11. I initiated contact with the MCC EEO office on January 5, 2022.

12. On January 26, 2022, I filed my informal complaint with the MCC EEO office.

13. On February 9, 2022, I was interviewed by LeJuan Butler, the EEO Counselor at the MCC EEO office.

14. Thereafter, I provided Ms. Butler with several email communications concerning my allegations.

15. On February 28, 2022, the MCC EEO office provided me with a Notice of Final Interview advising me of my right to file a formal EEOC Charge.

16. This is a case of persistent, abusive gender-based harassment by a male MCC employee, Marc Rockwell-Pate ("Rockwell-Pate") and blatant retaliation by my supervisor, Leigh Sadleir, Managing Director, Communications ("Ms. Sadleir") and Aysha House, Vice President, Congressional and Public Affairs ("Ms. House").

17. After multiple complaints to Mss. Sadleir and House by me and other employees, and to Human Resources ("HR"), MCC took no action to rein in Mr. Rockwell-Pate. Although my concerns were verified by three other agency employees, MCC blamed me and stated I was responsible for not making Mr. Rockwell-Pate feel welcome at MCC, an allegation I vehemently deny.

2

18. The following female employees also complained about Mr. Rockwell-Pate: Jenna Mosley ("Ms. Mosley") and Sara Reef ("Ms. Reef"). In addition, a male employee, Kyle Burk ("Mr. Burk"), complained to Ms. Sadleir that he had witnessed Mr. Rockwell-Pate's harassment of me and other female employees, and explicitly stated that this behavior was motivated by gender bias. These employees are witnesses to Mr. Rockwell-Pate's discriminatory behavior and have information about Ms. Sadleir's failure to address it.

19. Since February 2021 and continuing through the present, Mr. Rockwell-Pate has subjected me to a hostile work environment because of my sex (female, non-sexual). Examples of this gender harassment include but are not limited to the incidents described herein.

20. On February 17, 2021, Mr. Rockwell-Pate, in a threatening, aggressive manner, told me that my priorities are "whatever [he says]" and if I did not "get with the program there would be consequences." Mr. Rockwell-Pate is a Supervisory Communications Specialist and is not my supervisor. He had no authority to compel me to do his work. At all relevant times I reported, and still report to Ms. Sadleir.

21. On February 18, 2021, I spoke with Ms. Sadleir about the February 17th incident with Mr. Rockwell-Pate. I asked about filing a formal complaint with HR. Ms. Sadleir agreed that Mr. Rockwell-Pate's behavior was unacceptable and told me that she would address the matter.

22. On February 25, 2021, I again complained to Ms. Sadleir concerning continuing aggressive behavior by Mr. Rockwell-Pate directed at me and my female colleagues, Mss. Mosley and Reef.

23. On February 25, 2021, in an attempt to intimidate me, Mr. Rockwell-Pate stated that he is Ms. Sadleir's "right-hand man." That same day, I went to Ms. Sadleir again and stated

3

AFDOCS//1 043258.00001AFDOCS25356901

my intention to file a complaint with HR, but Ms. Sadleir directed me to continue bringing any concerns to her directly.

24. On March 10, 2021, I tearfully asked Ms. Reef for HR contact information following a contentious telephone call with Mr. Rockwell-Pate. I was sobbing after speaking with Mr. Rockwell-Pate.

25. On March 12, 2021, I contemplated contacting HR after Mr. Rockwell-Pate continued to verbally attack me for revising his poorly written work and assigned me tasks with arbitrary deadlines, although he was not my supervisor and had no authority to task me with assignments. Mr. Rockwell-Pate had sent a number of documents for edits and comments by the group. Although it was not my job or Ms. Mosley's to revise and correct his documents, we did so to avoid potential reputational harm to the Agency. At that time, I did not complain to HR because I feared retaliation.

26. On his LinkedIn account, Mr. Rockwell-Pate stated he was Deputy Communications Director and is now a "Press Secretary." Neither of these titles are accurate and he remains a Supervisory Communications Officer. Mr. Rockwell-Pate is untruthful about his role at MCC thus casting doubt upon his truthfulness generally.

27. On March 22, 2021, Ms. Mosley and I approached HR via email requesting a meeting to discuss "team dynamics" and report Mr. Rockwell-Pate's aggressive behavior towards female colleagues to Lavetta Young ("Ms. Young") in HR on conditions on confidentiality because we both feared retaliation from management.

28. On April 2, 2021, Ms. Young missed her appointment with Ms. Mosley and me.

29. On April 5, 2021, Ms. Young missed the rescheduled appointment with Ms. Mosley and me.

4

30.    On April 7, 2021, I met with Mr. Rockwell-Pate and Mr. Burk. During this meeting, Mr. Rockwell-Pate yelled at, shushed, and belittled me.  He also told me to "stay in [my] lane" and bullied me into remaining on the phone with him to work.

31.    Later that day, in an email, Mr. Burk noted that when Mr. Rockwell-Pate was not instigating a confrontation with, or yelling at, me, he was behaving similarly with Mss. Mosley or Reef.  Mr. Burk noted that Mr. Rockwell-Pate treats female employees more harshly than male colleagues.

32.    On April 9, 2021, I contacted HR again to set up an immediate appointment due to the rapidly deteriorating situation and met with Kim Bell ("Ms. Bell") and Ms. Young, along with Ms. Mosley.

33.    Later that day, Mss. Mosley, Reef and I met with Ms. Sadleir to discuss concerns about ongoing gender-based harassment and verbal abuse by Mr. Rockwell-Pate. We also disclosed our meeting with HR concerning Mr. Rockwell-Pate.

34.    Ms. Sadleir stated that she would share our concerns with Ms. House and encouraged me and the other meeting participants to confront Mr. Rockwell-Pate in the moment. I did not feel comfortable confronting Mr. Rockwell-Pate because of his bullying and threatening demeanor.

35.    I told Ms. Sadleir this on April 9, 2021, and on other occasions as well. Confronting him in the moment only results in more yelling and intimidation by Mr. Rockwell-Pate and further trauma for me.

36.    On April 16, 2021, Mss. Reef, Mosley, Mr. Burk and I met with Ms. Sadleir to discuss the ongoing gender-based harassment of females and the hostile work environment created by Mr. Rockwell-Pate. Ms. Sadleir continued to emphasize it was incumbent upon us (the victims)

5

AFDOCS//1 043258.00001AFDOCS25356901

to confront him in the moment to let him know his behavior was unacceptable. She said she would speak to him about his behavior.

37.     On April 27, 2021, Ms. House confirmed that she was aware of the ongoing issues with Mr. Rockwell-Pate and encouraged me to confront him in the moment. I did not feel comfortable confronting Mr. Rockwell-Pate because of his bullying and intimidating demeanor.

38.     Two days later, on April 29, 2021, Mss. Reef, Mosley, Mr. Burk, and I met with Ms. Sadleir again to voice our complaints. Ms. Sadleir continued to encourage us to confront Mr. Rockwell-Pate in the moment, despite the fact that as of June 9, 2022, he began supervising Mr. Burk only, and has been combative, intimidating, and abusive to female employees. Mr. Rockwell-Pate continues to insist he has the authority to assign work to Ms. Mosley and me.

39.     On May 4, 2021, I met with Ms. Sadleir to report that Mr. Rockwell-Pate interrupted me during an Agency briefing, shared incorrect information, and made me look incompetent.

40.     On that same day, and although she was aware of the complaints about Mr. Rockwell-Pate, Ms. House announced that Mr. Rockwell-Pate and I would co-lead a strategy effort. This was punitive for me given the ongoing gender-based harassment and intimidation of me by Mr. Rockwell-Pate.

41.     When I responded to Mr. Rockwell-Pate concerning the assignment with, "I am looking forward to working with you" he replied with, "Whatever" with an accompanying mocking GIF, further belittling me despite my attempt at cordiality and professionalism. The GIF can be viewed here: https://media.giphy.com/media/xT9KVeEPWqBlmDLgME/giphy.gif

42.     On May 5, 2021, I (on behalf of Mr. Burk and Mss. Mosley and Reef) requested an urgent meeting with Ms. House, which was subsequently scheduled for the next day at 1:30 p.m.

6

AFDOCS//1 043258.00001AFDOCS25356901

43. On May 6, 2021, Mr. Rockwell-Pate sent me a private message during my presentation telling me to be quiet and bullying me to ask him for permission to speak. By that point. on several occasions I had told him that his comments are distracting and disrespectful. but to no avail. Asking him to stop only escalated the abusive behavior.

44. That same day, I met with Mss. House and Sadleir, and Ms. House stated she was unaware of every report my colleagues and I had made to Ms. Sadleir concerning Mr. Rockwell-Pate's behavior despite Ms. Sadleir's statements to the contrary.

45. My female colleagues, Mss. Mosley. Reef, and I try to avoid Mr. Rockwell-Pate because confronting him only makes the situation worse.

46. The next day, on May 7, 2021, Mr. Rockwell-Pate sent me a private message during my presentation to silence me, saying "ML, you have to stop talking and let them answer the question you just asked." His comment was rude and demeaning.

47. On May 10, 2021, I reported the May 4th and May 7, 2021, confrontations with Mr. Rockwell-Pate to Ms. Sadleir, to which she responded, "Thanks for sharing, ML. I really do appreciate it."

48. On May 11, 2021, Mr. Rockwell-Pate stated without prompting, "Older women over 40 should not have children." I am 41 years of age. He then silenced me, again while I was giving a departmental briefing by privately texting me, "ML pause for a second between all these things so they can take it all in." He then proceeded to laugh at me on camera in the middle of my presentation. This incident of ridicule, and deliberate distraction, upset me so much that I immediately reported the incident to Ms. Sadleir and informed her that due to ongoing harassment and emotional abuse from Mr. Rockwell-Pate, I was taking the rest of the day off.

AFDOCS//1 043258.00001AFDOCS25356901

49.    Two days later, on May 13, 2021, I informed Ms. Sadleir that Mr. Rockwell-Pate's bullying and intimidation was affecting my ability to do my job after Mr. Rockwell-Pate began deleting my work from shared documents. He should have been using track changes for any edits which is customary at the Agency.

50.    On May 14, 2021, Mr. Rockwell-Pate repeatedly stated without prompting "[Ms. House] trusts me." I then contacted Talaya Clay ("Ms. Clay") in HR seeking guidance on how to stop the hostile work environment. Ms. Clay erroneously advised me that unless the harassment was overtly sexual in nature, there was nothing I could do about it.

51.    On May 27, 2021, only ten (10) days after my last complaint to Ms. Sadleir, I received the first negative mid-year review in my three (3) years with the Agency and nearly fourteen (14) years of federal service. That same day, Mr. Rockwell-Pate said to my colleague, Andrew Ladson, "we all know that Molly Lynn's work product is shit."

52.    On June 9, 2021, Mr. Rockwell-Pate said to me, "your face shows your frustration," during a meeting. I replied that I was "not frustrated" and "Just [doesn't] smile a lot before 10 a.m." This is another aggressive act by Mr. Rockwell-Pate, who seems to believe not only that woman must smile at work, but it is his place to make them do so.

53.    On June 9, 2021, during a departmental training on microaggressions, Mr. Rockwell-Pate complained about being subjected to "woman-splaining," and the trainer explained to him that his comment was aggressive. This is emblematic of Mr. Rockwell-Pate's attitude toward female colleagues. The entire department, including Ms. House and Mr. Burk, witnessed this behavior.

54.    On June 29, 2021, Mr. Rockwell-Pate said to me, "I just wanted to see you smile," during a meeting after silencing me moments before by saying "we do only have 25 more minutes"

8

(implying I needed to stop talking). I responded that I did not appreciate his comments while I am speaking. Again, Mr. Rockwell-Pate is not my supervisor and has no legitimate purpose for saying these sexist things to me.

55. After 6 months of harassment and complaints which MCC chose to ignore by neither investigating nor taking any prompt remedial measures to ameliorate the situation (as is required by MCC's Anti-Harassment Policy); and having received no relief, I was compelled by my physician and psychologist to take medical leave from August 2 to October 18, 2021.

56. On August 1, 2021, my anxiety reached life threatening levels and I took medical leave as advised by my physician and psychologist. I provided medical leave documentation to HR from my doctors stating that I was unable to work because I was no longer able to tolerate undue stress or toxic environments such as what I experienced at MCC's Department of Congressional and Public Affairs.

57. On September 9, 2021, I was admitted to an intensive, inpatient treatment program at Caron Treatment Centers for treatment of anxiety, depression and to recover from the months of gender-based harassment, bullying and abuse.

58. On October 18, 2021, I returned to work after utilizing medical leave due to the pervasive gender harassment and emotional abuse by Mr. Rockwell-Pate.

59. The harassment resumed within eight business days of returning to work.

60. On October 28, 2021, Mr. Rockwell-Pate asked me about my hair color during a meeting via instant messenger saying "Did you change your hair color? It looks to have a more strawberry tint to it."

61. On November 5, 2021, Mr. Rockwell-Pate told me via instant messenger during a meeting, "you look nice" with an accompanying ugly woman GIF (which is also homophobic).

9

The GIF may be viewed here:

https://media2.giphy.com/media/cCJtf3gxO9WMyK4oiv/giphy.gif?cid=de9bf95eutmvxp24scxv-fqn7n99tbf7fnluymtrqwpoiz5ls&rid=giphy.gif&ct=g

62.    On November 12, 2021, Mr. Rockwell-Pate told me via instant messenger during a meeting, "if you are happy; tell your face."

63.    On November 15, 2021, I again asked Ms. Sadleir to put an end to Mr. Rockwell-Pate's inappropriate behavior and gender-based harassment. She committed to having a conversation with him to convey that comments on personal appearance are inappropriate in the workplace, but his behavior has continued.

64.    On November 23, 2021, Ms. Sadleir approved my telework schedule for 2022, but Ms. House returned the schedule and stated that my "performance review" does not allow for telework, implying that my review would be unsatisfactory.

65.    Soon afterward, I contacted Ms. Sadleir concerned that my performance review had been completed before my peer performance feedback had been received. This is contrary to the MCC performance review process. When I asked Ms. Sadleir if I was being placed on a Performance Improvement Plan ("PIP"), Ms. Sadleir said I was not. Moreover, I confirmed that my review could not possibly be a foregone conclusion because my peer reviews were not due until November 29th. Ms. Sadleir confirmed that my peer reviews had not all been received and that my review was not complete as of that time.

66.    On December 15, 2021, I was informed that my evaluation rating was: "*Fails to Meet Expectations*" and I was placed on a PIP (although Sadleir had claimed I would not be put on a PIP). MCC again violated its own policies by rating me before my peer performance reviews were even submitted. In fact, my MCC peer reviews have always been exemplary and there is

10

nothing to suggest they would not be for 2021. To date, the Agency has not released my peer reviews for 2021 which is against standard operating procedure. The PIP requirements were onerous and were devised to ensure that I am unlikely to successfully complete the PIP.

67. On January 26, 2022, Mr. Rockwell-Pate once again commented on my physical appearance before a meeting. While laughing he asked if the shirt I was wearing is a "Sperry" shirt and then mockingly commented on my devotion to sailing. I promptly turned off my camera to avoid additional observations and comments on my appearance.

68. Due to my hard work and diligence, I succeeded in completing the PIP even though Ms. Sadlier ignored some of my requests for instructions and feedback during the PIP period and missed several deadlines that hindered my progress towards completion. Ms. Sadlier met with me on February 15, 2022 and informed me I had successfully completed all PIP requirements. Nevertheless, Ms. Sadleir stated should my performance in any of the Leadership Dimensions or Individuals Goals falls to the "Fails to Meet Expectations" level at any time during the next 10 months, she **will** initiate a reassignment, reduction in grade, or removal from the Federal Service. The Office of Personnel Management (OPM) prescribes such action is at the discretion of the supervisor who **may** take such action. This means that if my performance slips in any way, even if it is minor, Ms. Sadlier has already determined she intends to take action to reassign, demote or remove me from Federal Service without warning or an opportunity to improve. This is further retaliation by Ms. Sadleir and compounds the emotional distress I continue to experience at MCC.

69. On March 2, 2022, at the beginning of an 8:00 a.m. call with Nepal (at which Ms. Sadleir was present), when I said, "good morning," Mr. Rockwell-Pate replied with "Wow! Don't sound so enthusiastic, Molly Lynn" as if to imply my tone should be bubbly and more energetic. There was nothing about my words or tone that was unprofessional. Even so, his implication was

11

AFDOCS//1 043258.00001AFDOCS25356901

not only that women should be bubbly and energetic, but he apparently thought it was his job to correct me, in front of my supervisor and colleagues for falling short of his standards of enthusiasm.

70.    On March 3, 2022, even after the aforementioned requests to refrain from commenting on my physical appearance stating very clearly that all such remarks are unprofessional, inappropriate, and unwelcome, at the beginning of a department wide meeting, Mr. Rockwell-Pate commented on my outfit saying "[I] look really nice today." As a result of the comment, I once again turned off my camera to avoid subsequent unsolicited observations from Mr. Rockwell-Pate. Turning off the camera in a hybrid work environment hinders my ability to engage virtually with my colleagues and managers. I have stated to Ms. Sadleir time and again that I should not be made to feel nervous, judged or under threat of being subjected to comments or ridicule based on my appearance, tone or any other factor while simply trying to do my job.

71.    On March 7, 2022, I emailed Ms. Sadleir and copied Ms. House about these two incidents. That same day, Ms. Sadleir replied by stating she would notify HR and speak with Mr. Rockwell-Pate, but there is no indication that he will be subject to any disciplinary action due to his pattern of gender bias. This contrasts with my being placed on a PIP for outdated and demonstrably false issues. This is the first time in over a year of harassment complaints that Ms. Sadleir has responded to my complaints by stating she will notify HR.

### MCC Retaliated Against Ms. Westrate Because of Her Protected Activity and Medical Leave of Absence

72.    This timeline demonstrates that MCC retaliated against me because I exercised the right to be free of gender-based harassment and emotional abuse. Both reviews were calculated

12

to punish me for my complaints. The year-end review also punished me for taking a medical leave of absence due to my severe emotional distress caused by Mr. Rockwell-Pate.

73.    The 2021 mid-year and year-end reviews constitute blatant retaliation by MCC. In both my mid-year review and end of year rating, the charges and "evidence" MCC presented are false and misleading.  The allegations fall within several categories:

a)  demonstrably false (as proven by screen shots, emails, and analytical data); or

b)  exaggerations of two off handed comments which were taken out of context and weaponized against me, occurred five months apart and were certainly not an ongoing pattern of behavior. This allegation is easily rebutted by my colleagues' statements in my defense; or

c)  issues which date from 2020 and were successfully adjudicated in my favor in connection with my 2020 review; or

d)  failure to consider concurrent events and circumstances completely out of my control, such as COVID-19, the constraints of working within virtual environments, the challenges of collaborating with colleagues spanning time-zones from Africa to Mongolia, or foreign governments moving event dates and shifting geo-political situations.

73.    The year-end review also fails to consider my peer reviews, in violation of MCC procedure for performance reviews.  Ms. Sadleir and Ms. House finalized the review before they received the peer reviews, which have rated my work as uniformly outstanding every year from 2018 to 2020, and there would be no reason they would not be exemplary for 2021. Yet, they remain unpublished and unavailable in the MCC Performance Management System.

74.    In my 2021 mid-year and final evaluations, MCC cited two (2) incidents from November 2020.  I addressed both events and they were adjudicated in my favor during my

13

AFDOCS//1 043258.00001AFDOCS25356901

December 2020 evaluation. I received a "Consistently Exceeds Expectations" rating for 2020. The fact that MCC resurrected incorrect and outdated issues to undermine my overall performance for 2021 proves that both of my 2021 reviews were retaliatory.

75.     In addition, my year-end evaluation relies on the following false or misleading accusations:

a) Alleged mismanagement of the Liberia Closeout Campaign (which ran from February to April 2021). MCC cited this four separate times under each "failed component" of my evaluation. This one issue was repeated to create the misleading impression of four separate instances of poor performance over time. I can demonstrate these narratives are either patently false or deliberately misconstrue events. Moreover, I have evidence that much of any blame lays with management and circumstances outside my control.

b) MCC alleges that I failed to properly utilize storytelling techniques in a video featuring U.S. Ambassador to the U.N., Linda Thomas-Greenfield, Senator Chris Coons, Congressman David Price, agency leadership and former Liberian Ambassador, Christine Elder. All of them congratulated MCC on its achievements while speaking from a script I authored and due an initiative I conceived and executed. The video is the first of its kind to garner such noteworthy outside praise and, to date has garnered **over 27k views worldwide making it the most successful and widely viewed video in the history of MCC** (by about a factor of 30). (Viewership of MCC products typically averages around 150 - 300 views). Yet, my PIP states that this video was barely useable, not up to MCC standards, and reflected poorly on the Agency. This is absurd given the overwhelmingly positive response to the video.

14

AFDOCS//1 043258.00001AFDOCS25356901

c) Alleged failure to put into practice with the CPA team the storytelling plans and tactics I studied during a four (4) month certification course at Georgetown University. This charge is ludicrous. I have documentary evidence to prove not only that I did put into practice storytelling techniques for the benefit of the Agency, but that management repeatedly obstructed me from completing this task. The PIP is clearly inaccurate. It states: "the CPA department has not benefitted from MCC's investment in the "Social Impact Storytelling" program and the learning you gained has been minimally applied to your portfolio of work." As the video discussed in sub-section b above shows, this claim is blatantly false.

d) Moreover, the PIP is directly contradicted by Ms. Sadleir's November 30, 2020 comments on my storytelling efforts in which she said: "She was an early contributor to the CPA storytelling and content collection efforts, and regularly shares insights and lessons learned in her Georgetown certificate program. She was actively engaged in onboarding her new international communications colleague and worked hard to empower and equip her with the tools needed to be successful at MCC out of the gate."

e) In addition to the wildly successful Liberia video discussed above, I spearheaded a storytelling effort in Mongolia (at the same time as the Liberia video). This Mongolia video is the second most watched video that the team has created to date, as are two animated videos in Nepal. Ms. Mosley also cited my storytelling assistance on a Sierra Leone project - to name one more. I can provide additional storytelling examples.

f) The PIP alleges that I failed to manage the process concerning a video speech of the MCC Chief Executive Officer which was not recorded. This is blatantly false. I have written confirmation from Ms. Sadleir and the director of the creative services team

15

that the video was recorded, and the process went smoothly. When I looked for the video about two weeks later, it was missing. I was on vacation when the video was recorded and had nothing to do with it being lost. Furthermore, when I was given the opportunity to re-record the video, Ms. Sadleir declined the option.

g) Alleged failure to understand my role and that of my colleague, Jenna Mosley. This concerns a single off handed comment which led to a misunderstanding between Ms. Mosley and me on November 27, 2020. It was adjudicated in my favor during my 2020 Evaluation on November 30, 2020, and was immediately corrected to remove any reference to this misunderstanding. This minor issue, Ms. Mosley and I enjoy a collegial working relationship. and the incident is irrelevant to my 2021 review and should not have been included.

h) MCC claims, by extraordinary coincidence, on that same day, November 27, 2020, I failed to successfully manage a milestone event in Togo from Washington, D.C. I have evidence and explanations for the lack of organization which I shared with management shortly after the event took place including the shift of event dates by the government of Togo and a lack of communication among MCC leadership. In fact, in an email dated November 27th from Ms. Sadleir to me, she admitted that she [Sadleir] had failed to communicate the latest updates to management and remarked "I know there are a lot of moving pieces with this – as is always the case in coordinating with in-country teams and events – but there is a lot of room for improvement in how the details have been kept track of and communicated across the board. **Thanks for your efforts on this**, let's work **together** to determine how to improve the process the next time around." Thus, to the extent there was a problem, Ms. Sadleir was equally responsible.

16

i) Further, I had contracted COVID and although I was sick, was working tirelessly on the Togo project over the Thanksgiving 2020 holiday. The problems with this project were due to management miscommunication, not me. I have documents which prove this was the case.

j) The Togo project took place in 2020 and was successfully adjudicated in my November 30, 2020, review. It has no place in my 2021 performance evaluation.

k) Alleged failure to execute my plan for an international Communications College Conference event. My management of this event was underway when I was compelled to take medical leave from August 2 to October 18. The event was held on October 27th. Given my medical leave, I was unable to manage the project and MCC was aware of this. MCC retaliated against me for taking medical leave by blaming me for an event which was largely executed others while I was on medical leave and was hailed as a success by both MCC leadership and conference attendees.

l) Notably, the year-end evaluation failed to note any alleged performance issues *after* March 2021, except for the Communications College Conference, which I was unable to manage while I was on medical leave of absence. It is *per se* retaliation to punish me for work I was excused from performing while on medical leave of absence.

76.    Additionally, both my mid-year and year-end reviews fail to mention any of the copious amounts of successful work I performed during 2021, including: conceiving of and contributing to Agency priority events such as Earth Day, World Water Day, Africa Day, the launch of the agency's new climate strategy, the Kick-Off of the MCC Mongolia partnership, crisis communications leadership and media management in Nepal, and crisis situations in Tunisia and Lesotho (among other accomplishments).

17

77.    MCC also did not consider that my 2021 accomplishments were achieved amid a barrage of pervasive gender-based harassment which management failed to investigate or stop.

78.    As a result of the PIP, I was required to work in the office rather than remotely. Mr. Rockwell-Pate, who tends to work in the office, purposely chose a desk next to mine, in an office full of empty desks, further compounding my stress due to potential harassment scenarios. Management was aware of the situation yet permitted Mr. Rockwell-Pate to work in close proximity despite my repeated complaints about him. I am no longer required to work in the office due to my successful completion of the PIP.

79.    The timing of both my 2021 evaluations is strongly suggestive of retaliation. As noted above, I complained to Ms. Sadleir on May 11 and 13, 2021 and to HR on May 14, 2021. A mere *nine business days* later, on May 27th, I received the first negative performance review of my professional career.

80.    MCC has demonstrated its retaliatory motive by included outdated and successfully adjudicated issues from 2020 in my 2021 performance reviews, by misrepresenting my 2021 performance, and blaming me for things that happened while I was on medical leave.

81.    Title VII makes it unlawful "for an employer to discriminate against [an employee] ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

82.    The Title VII "opposition clause" has an "expansive definition." *See* EEOC Enforcement Guidance on Retaliation and Related Issues ("EEOC Guidance"), Section II.A.2. This includes, of course, the multiple complaints I made to Ms. Sadleir, Ms. House, and HR concerning the hostile work environment created by Mr. Rockwell-Pate.

18

83.    My negative performance review on December 15, 2021, stating that I "Fail to Meet Expectations" and placing me on a PIP also violated the Rehabilitation Act of 1973, which makes it unlawful for a federal employer "to coerce, intimidate, threaten or *interfere with* any individual" in the exercise or enjoyment of "any right granted" under the statute.

### MCC Violated Its Anti-Harassment Policy

84.    MCC has violated its Anti-Harassment Policy (the "Policy"), a copy of which is attached as Enclosure 1. HR incorrectly informed me that it could not address my complaints because Mr. Rockwell-Pate's abuse was not sexual. In fact, the Policy defines "unlawful Harassment" as:

> 4.1 Unlawful harassment includes, but is not limited to unwelcome conduct, intimidation, ridicule, insult, offensive comments, jokes or physical conduct based on race, color, religion, *sex (whether or not of a sexual nature),* national origin, age (over 40), disability, genetic information, or reprisal when
>
> ....
>
> b) the conduct is sufficiently severe or pervasive as to alter the terms, conditions or privileges of the employee's employment, or otherwise create a hostile or abusive work environment. This type of harassment does not involve discrete personnel actions such as denial of promotion. (emphasis added)

85.    MCC proclaims its commitment to mutual respect in the workplace. Section 5.1 states: "MCC is committed to maintaining high standards of conduct in the workplace, providing a work environment for its employees and contractors that fosters mutual respect among coworkers and is free from sexual and other harassment. MCC strives to protect employees (and applicants for employment) against harassment or against a hostile and intimidating environment. MCC has determined that the most effective way to limit harassing conduct is to treat it as misconduct, even if it does not rise to the level of

19

AFDOCS//1 043258.00001AFDOCS25356901

harassment actionable under Title VII of the Civil Rights Act of 1964, as amended." Unfortunately, in my case, MCC failed to live up to its own policies.

## Legal Claims

86.    The Policy, as well as Title VII, place the onus of ensuring a harassment-free workplace squarely upon MCC management, including Mss. Sadleir and House.[1] Policy Section 5.2 states: "A hostile work environment claim under Title VII requires a pattern of offensive conduct that creates a working environment that is intolerable. However, if evidence of inappropriate harassing conduct comes to the attention of MCC officials, MCC will act before the harassing conduct becomes as pervasive and offensive as to constitute a hostile work environment." (emphasis added). Unfortunately, Mss. Sadleir and House took no action to protect me from Mr. Rockwell-Pate's sexist and abusive behavior.

---

[1] Section 7.2 states:  Each MCC supervisor and manager shall be responsible for:

a)    Acting promptly and appropriately to prevent harassment in the workplace and retaliation against those who complain of harassment;

b)    Reporting, pursuant to the procedures set forth below, any incident of harassing conduct that they witness or that is otherwise brought to their attention;

c)    Receiving and handling allegations of harassing conduct promptly and appropriately, utilizing the procedures set forth below;

d)    In consultation with OGC, HR, and EEO, providing interim relief (temporary transfer to another supervisor, assignment to another work station or office, etc.) to alleged victims of harassment pending the work of the reassignment of the alleged harasser to ensure that further harassment to the extent practicable does not occur; and

e)    Using the procedures set forth below in taking prompt and appropriate corrective and disciplinary action, up to and including removal, against employees who have engaged in harassing conduct or who have not carried out their responsibilities under this policy.

20

87.    MCC Policy and Title VII explicitly prohibit retaliation against employees who complain about gender-based harassment. Section 6.8 provides: "Title VII of the Civil Rights Act of 1964 prohibits discrimination based on reprisal. Reprisal occurs when management treats employees differently because they are or were involved in a protected EEO activity. Protected activities include seeking or participating in EEO counseling, providing testimony in an EEO investigation or at an EEO hearing, filing a discrimination complaint or speaking out against discriminatory activities."

88.    The Rehabilitation Act of 1973, as amended, prohibits discrimination based on disability.  I suffered from anxiety and depression and had to take a medical leave of absence to get my condition under control and am disabled within the meaning of the law.  29 U.S.C. §§ 701 to 718.

89.    Given my history of exemplary performance, how does a highly decorated and notably effective communications leader suddenly fail to meet basic performance standards after nearly 14 years of federal service?  The answer is clear:  MCC and its managers retaliated against me through a negative performance review and subsequent punitive PIP because I repeatedly complained about pervasive gender-based harassment to Mss. Sadleir and House and to HR during 2021 and was on medical leave due to Mr. Rockwell-Pate's depredations.

## Relief Sought

90.    To remedy this egregious gender-based harassment and retaliation, I seek the following relief:

   a) Cessation of the ongoing discrimination, harassment, and retaliation;

   b) Removal of the PIP and any reference to it from my employment records and replaced with an evaluation rating of "Consistently Meets Expectations" or better;

21

AFDOCS//1 043258.00001AFDOCS25356901

c)  Corrective action to be taken against Mr. Rockwell-Pate in accordance with MCC's Anti-Harassment Policy;

d)  Corrective action to be taken against Mss. Sadleir and House, for failure to comply with the MCC Anti-Harassment Policy, their refusal to stop the hostile work environment, and their retaliatory actions;

e)  Payment of my reasonable attorneys' fees;

f)  Payment of my past pecuniary and non-pecuniary damages, including compensation for my severe emotional distress;

g)  Rescind my probationary status as a result of the retaliatory PIP; and

h)  Provide me with such other and further relief to which I am entitled under the law and facts of this case.

## DECLARATION

I, the undersigned, swear or affirm that the statements made in the above Charge are true to the best of my knowledge, information, and belief.

MOLLY LYNN WESTRATE                    DATED:

*ML Westrate*                          March 9, 2022

AFDOCS//1 043258.00001AFDOCS25356901